IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID EUGENE JENKINS            )
                                )
        Plaintiff,               )
                                )
   -vs-                          )   Civil Action No. 18-967
                                )
NANCY A. BERRYHILL,              )
ACTING COMMISSIONER OF SOCIAL    )
SECURITY,                        )
                                )
        Defendant.               )

AMBROSE, Senior District Judge.

# OPINION AND ORDER

## Synopsis

Plaintiff David Eugene Jenkins ("Jenkins") seeks judicial review of the Social Security Administration's denial of his claim for a period of disability and disability insurance benefits ("DIB"). Jenkins alleges a disability onset date of January 1, 2009, but because of prior applications and adverse decisions, the period at issue begins on January 9, 2014. (R. 90) The ALJ denied his claim following a hearing at which both Jenkins and a vocational expert ("VE") appeared and testified. Jenkins then appealed. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Docket Nos. 10 and 12. For the reasons set forth below, the ALJ's decision is affirmed.

## Opinion

1. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court

to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson*, 402 U.S. at 390, 91 S. Ct. 1420.

Importantly, a district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence,

assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

II. The ALJ's Decision

As stated above, the ALJ denied Jenkins's claim for benefits. More specifically, at step one of the five step analysis, the ALJ found that Jenkins had not engaged in substantial gainful activity since January 9, 2014. (R. 92) At step two, the ALJ concluded that Jenkins suffers from the following severe impairments: degenerative joint disease of the left shoulder; degenerative disc disease of the lumbar spine; cervical spondylosis with a small herniated nucleus pulposus from C4 to C6; coronary artery disease with total occlusion of the right coronary artery and mild nonobstructive disease of the left anterior descending artery; diagnosis of chronic pain syndrome; depressive disorder / diagnosis of bipolar disorder; panic disorder; and history of alcohol dependence. (R. 92-94) At step three, the ALJ concluded that Jenkins does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 94-97) Between steps three and four, the ALJ found that Jenkins has the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 97-106) At step four, the ALJ found that Jenkins is unable to perform any past relevant work. (R. 106) At the fifth step of the analysis, the ALJ concluded that, considering Jenkins's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national

3

economy that he can perform. (R. 107-108) As such, the ALJ concluded that Jenkins was not under a disability during the relevant period of time. (R. 108)

### III. Discussion

(1) Step Three - Listings

As stated above, at the third step of the analysis, the ALJ determined that Jenkins did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered Listings 1.02 (major dysfunction of a joint due to any cause), 1.04 (disorders of the spine), 4.00 (cardiovascular), including 4.04 (ischemic heart disease), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (R. 94)

Jenkins takes issue only with the ALJ's findings with respect to Listing 4.04. That Listing provides, in relevant part:

> 4.04 Ischemic heart disease, with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:
> …
> C. Coronary artery disease, as demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:
> 1. Angiographic evidence showing:
>    …
>    b. 70 percent or more narrowing or another nonbypassed coronary artery;
>    …and
>    …
> 2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. Part 404, Subpt. P, App. § 4.00(E)(9)(g).

4

The ALJ explained that Jenkins did not meet or equal Listing 4.04C because "the claimant does not have coronary artery disease demonstrated by appropriate medically acceptable imaging, and, in the absence of an exercise tolerance or drug-induced stress test, a medical consultant has concluded that performance of exercise tolerance testing would present a significant risk to the individual with angiographic evidence showing significant narrowing as contemplated in the listing and very serious limitations in the ability to independently initiate, sustain or complete activities of daily living." (R. 95) The ALJ added that Jenkins himself explained that any limitations in activities of daily living stemmed from generalized pain and mental symptoms rather than cardiovascular issues. (R. 95) Further, the ALJ explained that Jenkins' treatment for his coronary artery disease has been conservative in nature and there is no evidence of "serious ongoing or recurrent cardiovascular symptoms, issues, or limitations." (R. 95) The ALJ's findings in this regard are supported by substantial evidence of record. Jenkins is independent with respect to self-care. He dresses, bathes, and grooms himself. He can take public transportation, do his own laundry, and manage his own money.  (R. 96, 740)

Jenkins argues that he has produced evidence showing that he has blockage that meets the requirement of Listing 4.04C(1)(b).  Even accepting this assertion as true, however, this is just one of the many requirements associated with this Listing. Jenkins has not identified any symptoms due to myocardial ischemia as described in 4.00E3-4.00E7 nor his regimen of prescribed treatment. He has not cited to evidence of an exercise tolerance test or stress test or to a medical source statement indicating that such testing would present a significant risk to him. He has not proffered any evidence

in support of an assertion that he has "very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living"; that he continues to suffer the presence of ischemic symptoms despite a regimen of prescribed treatment, or that he is at risk for exercise testing. Rather, Jenkins proffers evidence only of a 100% occluded right coronary artery. *See* ECF Docket No. 11, p. 11, *citing* (R. 1011). As stated above, the ALJ's conclusion that Jenkins cannot satisfy these requirements is supported by substantial evidence of record. Consequently, I find no error with respect to the ALJ's analysis under step three.

(2) Residual Functional Capacity

As stated above, the ALJ concluded that Jenkins had the residual functional capacity to perform a range of light work with certain restrictions. (R. 97-106) In reaching this conclusion, the ALJ assessed and gave weight to the opinions of various medical professionals. The amount of weight to be accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.*, § 404.1527(c)(2). The opinion of a treating physician need not be viewed uncritically, however. Rather, only when an ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's]

impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must he give that opinion controlling weight. *Id.* Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient / physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. *Id.*, § 404.1527(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.*, § 404.1527(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), *quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § [404.1527]([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Soc. Sec. Admin*., 403 Fed. Appx. 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." *See* 20 C.F.R. § 404.1527(d)(1), (3); *Dixon v. Comm'r. of Soc. Sec.*, 183 Fed. Appx. 248, 251-

7

52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008).

Jenkins urges that the RFC is deficient because the ALJ "failed to discuss or analyze" findings by Dr. Petrolla, his treating orthopedist. *See* ECF Docket No. 11, p. 13. Jenkins' argument is premised upon the belief that Petrolla authored an opinion regarding his functional limitations. (R. 392) However, this Court agrees with the Government that James Burns, the physical therapist, authored the treatment plan at issue. Indeed, the form is entitled "Plan of Care" and indicates that it is "a summary of the functional limitations and impairments as identified upon evaluation, anticipated treatment goals and proposed treatment plan." (R. 392) It requests a signature from the referring physician and a return of the document so that the therapist can proceed with treatment. It references Petrolla as the referring physician. (R. 392) Given that Petrolla did not author the record, and that it was authored by a physical therapist, it was not entitled to deference as a medical opinion. *See Mastic v. Comm'r. of Soc. Sec.*, Civ. No. 17-161, 2018 WL 4157195, at * 1 n. 1 (W.D. Pa. Aug. 30, 2018).

Moreover, as the ALJ noted, physical therapy records after that initial date indicate that Jenkins steadily improved both with respect to his range of motion and his pain. (R. 99, 390) Injections provided relief. (R. 390) Indeed, Dr. Petrolla noted the benefit of the transforaminal injections. In December of 2014, Petrolla noted that he had performed an L3 and L4 transforaminal injection and that Jenkins "is actually making some good progress" and that he rated his pain between a "4 and 6 out of 10." (R. 674) In January of 2015, Jenkins presented for a follow up after an injection in the lumbar spine. Petrolla noted that Jenkins reported that "overall his pain is reduced pretty well" and that "he is feeling much better since the injection." (R. 671) In March of 2015, Petrolla observed that Jenkins "got some really, overall, good relief from his injection in his lumbar spine. We can repeat that in a few months if necessary." (R. 941) In April of 2015 he stated that "[w]e will move forward with another injection for MR. JENKINS. He got a lot of relief previously." (R. 663)

In short, the records referenced by Jenkins were authored by a physical therapist, not by Dr. Petrolla. Further, the ALJ did, in fact, address them as well as Dr. Petrolla's findings in the larger context of how Jenkins improved over time with treatment. Consequently, I reject Jenkins' contention that the ALJ "failed to discuss or analyze these findings by Dr. Petrolla, a treating physician" and that this failure prevents "meaningful judicial review."

Jenkins also faults the ALJ for failing "to discuss the findings of Plaintiff's lumbar spine MRI on September 30, 2014." *See* ECF Docket No. 11, p. 13. The records from that date indicate "[m]ild foraminal protrusions at the L3-4 and L4-5 level on the left side with contact of the respective exiting nerve roots." (R. 469) Admittedly, the ALJ's

9

decision does not cite specifically to this record. Yet "[t]he law does not require an ALJ to cite every piece of evidence in an opinion; if that were the case, each ALJ opinion would have to reproduce the medical record itself, a requirement both impractical and futile." *Keveanos v. Berryhill*, Civ. No. 18-3421, 2019 WL 1500624, at * 6 (D. N.J. April 5, 2019) (*citing*, *Pintal v. Comm'r. of Soc. Sec.*, 602 Fed. Appx. 84, 88 (3d Cir. 2015) and *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004)). Further, there is no reason to conclude that the ALJ failed to consider the evidence in question. Indeed, the ALJ cited to, and gave great weight to, the State agency physical consultant's evaluation and resulting conclusion that Jenkins is capable of performing a range of light exertional work as long as it does not require performing certain postural activities or working in certain environmental conditions. (R. 102) The ALJ cites to the consultant's opinion which, in turn, references the 9/30/14 Lumbar MRI at issue. (R. 181) As such, I reject the notion that the ALJ ignored the MRI at issue. As set forth above, substantial evidence supports the ALJ's conclusion that the transforaminal injections provided Jenkins with significant relief, and that his back did not present a disabling impairment.

Finally, Jenkins contends that the RFC is faulty because it does not account for his shortness of breath caused by the total occlusion of his right coronary artery. *See* ECF Docket No. 11, p. 15. Again, I disagree. The ALJ acknowledged that Jenkins had "coronary artery disease with total occlusion of the right coronary artery (RCA)." (R. 93) Further, she noted that "the claimant reported that he experiences chest pain, shortness of breath, and fatigue due to an occluded artery." (R. 98) Yet the ALJ found that Jenkins' statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully consistent with the totality of his treatment evidence to the extent

10

that they are inconsistent with the RFC assessment. (R. 98) Substantial evidence supports her conclusion. For instance, despite experiencing shortness of breath, and being counseled about smoking cessation, Jenkins continued to smoke approximately half a pack of cigarettes a day. (R. 98, 130, 1288) Indeed, the ALJ found that "[t]he claimant did not require any regular or ongoing treatment for his mild respiratory issue and he testified that he continues to smoke cigarettes daily." (R. 93) Additionally, as the ALJ noted, the treatment records indicate that management for Jenkins' cardiovascular condition is quite conservative, in the form of Lipitor and baby aspirin. (R. 100) Jenkins was encouraged to exercise regularly by his cardiologist. (R. 1179, 1281, 1289) In short, the reduction to light work activity accommodates any corresponding limitations.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID EUGENE JENKINS<br>    Plaintiff, | )<br>)<br>) | |
| -vs- | ) | Civil Action No. 18-967 |
| NANCY A. BERRYHILL,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY, | )<br>)<br>)<br>) | |
|     Defendant. | )<br>) | |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 17th day of June, 2019, it is hereby ORDERED that the Plaintiff's Motion for Summary Judgment (Docket No. 10) is DENIED and the Defendant's Motion for Summary Judgment (Docket No. 12) is GRANTED. It is further ORDERED that the ALJ's decision is AFFIRMED. This case shall be marked "Closed" forthwith.

                                  BY THE COURT:

                                  /s/ Donetta W. Ambrose
                                  Donetta W. Ambrose
                                  United States Senior District Judge